Filed 9/25/24  P. v. Martinez CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

### IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### FOURTH APPELLATE DISTRICT

### DIVISION THREE

|  |  |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G062679 |
| v. | (Super. Ct. No. 22CF2200) |
| EDGAR MACIAS MARTINEZ, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a judgment of the Superior Court of Orange County, Gary S. Paer, Judge. Affirmed.

Joshua L. Siegel, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Eric A. Swenson and Elana Miller, Deputy Attorneys General, for Plaintiff and Respondent.

\*          \*          \*

In the first (guilt) phase of a bifurcated trial, a jury found Edgar Macias Martinez guilty of murdering Alex Ruiz, Jr., a rival gang member, in a drive-by shooting. The jury also found Martinez guilty of being a convicted felon in possession of a firearm. In the second phase of the trial, the jury found true a gang-murder special circumstance allegation.

Martinez claims the trial court erred by allowing a gang expert to testify in the guilt phase of the trial that Martinez had pleaded guilty to a prior gang crime. Martinez also claims the trial prosecutor committed misconduct during the closing argument. But Martinez's claims have been forfeited on appeal because he did not object at trial. Alternatively, Martinez has not established ineffective assistance by his trial counsel for failing to object. We also find no prosecutorial misconduct or cumulative prejudice.

Thus, we affirm the judgment.

I.

FACTS AND PROCEDURAL BACKGROUND

On August 15, 2022, Ruiz was walking with his friend Andre P. (Andre) on Spurgeon Street in Santa Ana. This area was within the territory of the Logan Street criminal street gang. Ruiz and Andre were both members of Logan Street.

At about 3:17 p.m., a light blue Chevy Equinox pulled up next to Ruiz and Andre. Martinez was driving and was alone in the car. Martinez was a member of the Lopers gang, which is a rival of Logan Street gang. Martinez asked, "Where are you guys from?" Ruiz said he was from Logan Street. Martinez then fired one shot from a handgun through the passenger window and drove away. Ruiz was hit in the chest and died.

*Police Investigation*

Later that day, officers spoke to Andre at the police station in a recorded interview. Andre was generally cooperative and described what happened during the shooting. Andre said the shooter was in his 30s and was wearing a grey shirt; however, he said the shooter was wearing a ski-type mask, which obscured his face.

Police obtained video from a surveillance camera near the shooting. The video captured the shooting as Andre had described it. The shooter was wearing a grey shirt, but police could not make out his identity. Police were able to identify three license plate numbers from the light blue Chevy Equinox, which they determined was registered to Martinez's sister, whom they interviewed in her home, where she lived with Martinez and other family members.

Martinez's sister said that on the day of the shooting Martinez had borrowed her car to go to the gym at a mall, which was located about three miles away from the shooting. Martinez had returned home about 4:19 p.m., wearing a grey shirt. Police obtained various surveillance videos and still photos that showed the Chevy Equinox passing by Ruiz and Andre just prior to the shooting. The videos also later showed Martinez leaving the gym in a grey T-shirt, and then him leaving the mall parking lot in his sister's car, at about 4:15 p.m.

Martinez was eventually arrested at his home. Police found an operable .22-caliber rifle in his bedroom closet.

*Court Proceedings*

The People filed an information charging Martinez with murder and possession of a firearm by a felon. The People further alleged firearm and

3

out-on-bail enhancements, a gang-murder special circumstance, a shooting from a vehicle special circumstance, and two prior strikes.

During a pretrial hearing, the court agreed to bifurcate the trial on the gang-murder special circumstance. During the first (guilt) phase, the People called several witnesses, including Andre and a gang expert.[1]

At trial, Andre testified that he did not recall the details of the shooting. Andre further said that he did not recall making statements to the police. The video and a transcript of Andre's police interview were introduced into evidence.

After the guilt phase of the trial, the jury found Martinez guilty of first degree murder and possession of a firearm by a felon (Martinez stipulated that he had a prior felony conviction). The jury also found true the firearm allegation, and found true the special circumstance of discharging a firearm from a vehicle.

During the second phase of the trial, the People recalled the gang expert to testify. The jury found the gang-murder special circumstance to be true. The trial court later found the alleged prior strikes to be true. The court imposed a determinate term of nine years, a consecutive indeterminate term of life without the possibility of parole, plus 25 years to life.

## II.
## DISCUSSION

Martinez claims: A) the trial court abused its discretion by admitting evidence about a prior gang crime during the guilt phase of the trial; B) the prosecutor committed misconduct by misstating the burden of

---

[1] The pretrial proceedings and the gang expert's trial testimony will be covered in greater detail in the discussion section of this opinion.

4

proof during closing argument; and C) there is cumulative prejudice.

## A. Evidentiary Error Claim

Martinez claims the trial court erred in the guilt phase of the trial by allowing a gang expert to testify that Martinez had previously pleaded guilty to a gang-related crime. We disagree.

A challenge to the admission of evidence is reviewed for an abuse of discretion: "The trial court has broad discretion to determine the relevance of evidence [citation], and we will not disturb the court's exercise of that discretion unless it acted in an arbitrary, capricious or patently absurd manner." (*People v. Jones* (2013) 57 Cal.4th 899, 947.)

In this part of the discussion, we shall: 1) state the relevant principles of law; 2) summarize the trial court proceedings; and 3) analyze the law as applied to the facts.

### 1. Principles of Law

"Except as otherwise provided by statute, all relevant evidence is admissible." (Evid. Code, § 351.) "'Relevant evidence' means evidence . . . having any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action." (Evid. Code, § 210.)

California law provides that when "requested by the defense," the court shall generally bifurcate gang enhancements from the underlying charges. (Pen. Code, § 1109, subd. (a).)[2] The court shall then try the matter "in separate phases" by first adjudicating the question of defendant's guilt of

---

[2] Further undesignated statutory references are to the Penal Code.

the underlying offenses; if the defendant is found guilty, the court shall then hold "further proceedings to the trier of fact on the question of the truth of the [gang] enhancement." (§ 1109, subd. (a)(1)-(2).)

However, under section 1109, gang evidence may still be admissible in the guilt phase of a bifurcated trial when the evidence is relevant to prove the underlying charges. (See *People v. Ramos* (2022) 77 Cal.App.5th 1116, 1132; see also *People v. Chhoun* (2021) 11 Cal.5th 1, 31 ["The People are generally entitled to introduce evidence of a defendant's gang affiliation and activity if it is relevant to the charged offense"].)

That is, "evidence of gang membership is often relevant to, and admissible regarding, the charged offense. Evidence of the defendant's gang affiliation—including evidence of the gang's territory, membership, signs, symbols, beliefs and practices, criminal enterprises, rivalries, and the like— can help prove identity, motive, modus operandi, specific intent, means of applying force or fear, or other issues pertinent to guilt of the charged crime." (*People v. Hernandez* (2004) 33 Cal.4th 1040, 1049.)

In order to raise an error on appeal, the issue must first be raised in the trial court, otherwise the issue is forfeited. (*In re S.B.* (2004) 32 Cal.4th 1287, 1293 & fn. 2 (*S.B.*).) In a criminal trial, "a 'contrary rule would deprive the People of the opportunity to cure the defect at trial and would "permit the defendant to gamble on an acquittal at his trial secure in the knowledge that a conviction would be reversed on appeal."'" (*People v. Partida* (2005) 37 Cal.4th 428, 434.)

### 2. Trial Court Proceedings

The People filed a pretrial brief summarizing the anticipated evidence and addressing several motions in limine. The People stated:

"During informal discussions . . . , the People anticipate [Martinez] will request to bifurcate the gang special circumstance." The People stated they would not object to the bifurcation of the trial.

The People specified in their trial brief that they would still seek to introduce limited gang evidence through the testimony of their gang expert, Detective George Bodnar, in the guilt phase of the trial. "In this case, the gang backgrounds for both Lopers and Logan are highly probative when a documented Lopers gang member, Edgar Martinez, drives into Logan territory and shoots at a documented Logan gang member, [Ruiz], after hitting Mr. Ruiz up yelling out 'Where you from?'"

The People indicated in the brief that during informal pretrial discussions with Martinez, they had reached an agreement as to the "parameters for Det. Bodnar's gang testimony during the 'guilt phase.'" The parties had agreed Bodnar's testimony would include "general background information like history, signs or symbols, number of members, and what type of criminal activity Lopers members engage in."

The agreed upon gang evidence also included: "Edgar Martinez is a documented and self-admitted Lopers . . . gang member . . . based on: [¶] a. His prior contacts with law enforcement in gang territory with Lopers gang members. [¶] b. His prior contact with law enforcement in rival (Walnut) gang territory with other armed Lopers gang members in an admitted conspiracy to commit an assault on rivals with the firearms (15CF2497 conviction). [¶] c. His prior admission . . . that he has claimed Lopers since he was 11, grew up in Lopers territory, and [has] family in Lopers."

The parties further agreed Bodnar's testimony would include evidence about the Logan gang, the membership of Ruiz and Andre in that gang, and the rivalry between the two gangs. The agreed upon evidence also

included: "The significance of a 'hit up' or one gang member asking another suspected or actual member 'where you from?'"

At a pretrial hearing, the trial court addressed the People's motion to introduce gang evidence in the guilt phase. The court asked Martinez's counsel, "What is your position on that?" Counsel responded, "Your Honor, I believe the case law does allow some limited evidence to come in for motive purposes. So provided that the foundation is properly laid and it's limited to what the People have talked about, I submit to the Court on their request."

The trial court ruled that it would allow gang evidence to be admitted during the guilt phase. The court said, "I think most people on the street if you said 'where you from,' you know, if someone asked me that, I would say the East Coast. But in the gang world 'where you from' . . . could be viewed as a challenge, a hit-up, and it has some very distinct meaning other than a specific geographical location. So it would be very probative for the jury to hear this."

The trial court said, "The jury doesn't have to accept it. They can reject it. But certainly under [section] 352 of the Evidence Code this is highly probative. It gives meaning and flavor to the case. So I would definitely allow the D.A. to put on the evidence that she indicated." The court found the evidence was not remote, it would not cause an undue consumption of time, and it would not cause undue prejudice. The court said the jury "will already know about the murder charge. It's not like we are letting in another uncharged murder or a charged murder or other violent acts." The court further stated it would give the jury an instruction as to the limited purposes of the gang evidence.

During the guilt phase, Detective Bodnar testified that the area

of the shooting was within the territory of the Lopers gang. Bodnar testified one of Lopers' rival gangs is Logan Street. Bodnar said if gang members sought to perpetuate this rivalry, they would go into rival territory and commit violence. Bodnar testified that in a gang hit-up, "a gang member will ask another person about their gang affiliation."

Detective Bodnar testified that in order for him to opine as to whether a person is an active gang member, he considers factors such as the person's gang admissions, and their participation in gang crimes. The prosecutor asked Bodnar about a prior investigation from 2015:

"[Prosecutor:] In your review of that investigation did you learn those detectives contacted Edgar Martinez the Defendant in Walnut [rival] gang territory with three other admitted Lopers gang members?

"[Bodnar:] Yes.

"[Prosecutor]: In your review did you learn that the detectives recovered weapons either on or near where those four individuals were seen in Walnut territory?

"[Bodnar:] Yes.

"[Prosecutor:] Were charges filed in that case?

"[Bodnar:] Yes, they were.

"[Prosecutor:] And did the Defendant admit or plead guilty to committing a crime with other Lopers members while being an active participant in Lopers based off of the conduct of that investigation?

"[Bodnar:] Yes, he did.

"[Prosecutor:] Does that inform your opinion about whether Mr. Martinez is an active participant . . . of Lopers criminal street gang?

"[Bodnar:] Yes."

Detective Bodnar later testified: "My opinion is that Mr.

9

Martinez is a member of the Lopers criminal street gang, as well as an active participant . . . . And that is based on the background that I conducted which references the police reports, all the contacts such as the field identification cards, as well as the circumstances in the [instant] case involving the victims which are well-known rivals."

### 3. Application and Analysis

We find Bodnar's general testimony about criminal street gangs, his specific testimony regarding the rival Santa Ana gangs, and his testimony about Martinez's active participation in the Lopers gang, were all relevant to the jury's understanding of the case. That is, we find the gang evidence was relevant to explain Martinez's possible motive to shoot and kill Ruiz, a member of the rival Logan Street gang.

We also find the court properly weighed the probative value of the evidence against its possible prejudicial effect. (See Evid. Code, § 352.) The court further instructed the jury on the permissible use of the gang evidence (e.g., Martinez's intent, purpose, knowledge, and motive). The court also instructed the jury on the limitations on the use of the evidence: "You may not consider this evidence for any other purpose. You may not conclude from this evidence that the defendant is a person of bad character or that (he) has a disposition to commit crime." (CALCRIM No. 1403.)

In short, we find the trial court did not abuse its discretion when it granted the People's motion and admitted the gang evidence in the guilt phase of the trial through the testimony of Detective Bodnar.

Martinez argues for the first time on appeal that the trial court erred in admitting a portion of Bodnar's testimony, specifically about how Martinez "had previously pled guilty to committing a crime with other gang

10

members while being an active gang participant."

But Martinez did not make this objection at trial, so the issue has been forfeited for purposes of appeal. (See Evid. Code, § 353, subd. (a); see also *People v. Partida, supra,* 37 Cal.4th at p. 434 ["a 'contrary rule . . . would "permit the defendant to gamble on an acquittal at his trial secure in the knowledge that a conviction would be reversed on appeal"'"].)

Anticipating this well-known rule of forfeiture, Martinez alternatively argues that his trial counsel was ineffective for failing to object.

A defendant has a right to effective assistance of counsel. (*Strickland v. Washington* (1984) 466 U.S. 668, 685–686 (*Strickland*).) To establish a violation of this constitutional right, a defendant must show: 1) counsel's performance fell below an objective standard of reasonableness under prevailing professional norms; and 2) this resulted in prejudice to the defendant. (*Id.* at pp. 687–688, 691–692.)

A reviewing "court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." (*Strickland, supra,* 466 U.S. at p. 697.) Under the second prong, "the test for 'prejudice' is not solely one of outcome determination. Instead, the pertinent inquiry is 'whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair.'" (*In re Avena* (1996) 12 Cal.4th 694, 721–722.)

Here, as recommended by the Supreme Court, we can dispose of Martinez's ineffective assistance of counsel claim on the basis that he has not shown sufficient prejudice. (See *Strickland, supra,* 466 U.S. at p. 697.) That is, if we presume Martinez's trial counsel was ineffective for failing to object

11

to Bodnar's testimony concerning his guilty plea to an unspecified gang crime, we do not find that the admission of this evidence was prejudicial.

Detective Bodnar's testimony concerning Martinez's prior guilty plea was brief and nonspecific. Bodner did not testify as to exactly what "gang" offense Martinez had pleaded guilty to committing. The jury was not told whether Martinez had pleaded guilty to a violent or a nonviolent offense (the crime was apparently a conspiracy to commit an assault). Therefore, in light of the serious and violent nature of the charged crime (the driveby shooting of Ruiz resulting in his death), we do not find that the brief testimony about Martinez's guilty plea to an unspecified gang offense rendered "'the trial unreliable or the proceeding fundamentally unfair.'" (See *In re Avena*, *supra*, 12 Cal.4th at p. 721.) Moreover, by way of a stipulation, the jury necessarily knew that Martinez had been convicted of at least one prior felony, given the crime alleged in count two (a *felon* in possession of a firearm).

The jury was also properly instructed on the limited use of the gang evidence, thereby reducing any chance of possible prejudice. (See *People v. Washington* (2017) 15 Cal.App.5th 19, 26 ["As a 'general rule,' courts presume that juries can and will dutifully follow the instructions they are given, including instructions that limit a jury's consideration of evidence for certain purposes"].) Additionally, there was overwhelming evidence of Martinez's guilt. Indeed, the shooting was captured on video. The car used by Martinez in the shooting was later identified as his sister's. Also, the sister's statements about Martinez's whereabouts were consistent with the video and other identification evidence from both the mall and the gym.

To reiterate and conclude, Martinez has forfeited his claim on appeal regarding Detective Bodnar's testimony because he did not object

during the trial. Further, even if we presume ineffective assistance by trial counsel under the first prong of *Strickland*—for failing to object—we would not find that the admitted evidence concerning Martinez's prior unspecified gang conviction was prejudicial. (See *Strickland*, *supra*, 466 U.S. at p. 697 ["If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed"].)

## B. *Prosecutorial Misconduct Claim*

Martinez claims the prosecutor committed misconduct during closing argument by misstating the burden of proof. We disagree.

"As a general matter, an appellate court reviews a trial court's ruling on prosecutorial misconduct for abuse of discretion." (*People v. Alvarez* (1996) 14 Cal.4th 155, 213.) In this part of the discussion, we will: 1) review relevant legal principles regarding prosecutorial error; 2) summarize the trial court proceedings; and 3) analyze the law as applied to the facts.

### 1. *Relevant Legal Principles*

"A prosecutor's conduct violates the Fourteenth Amendment to the federal Constitution when it infects the trial with such unfairness as to make the conviction a denial of due process. Conduct by a prosecutor that does not render a criminal trial fundamentally unfair is prosecutorial misconduct under state law only if it involves the use of deceptive or reprehensible methods to attempt to persuade either the trial court or the jury." (*People v. Morales* (2001) 25 Cal.4th 34, 44.)

Generally, in order to raise an alleged error on appeal, the issue must first be raised in the trial court. (*S.B., supra,* 32 Cal.4th at p. 1293 & fn. 2.) Specifically, a defendant forfeits a prosecutorial misconduct claim on

13

appeal unless the defendant objected to the alleged misconduct when it occurred, and further asked the court to admonish the jury. (See *People v. Ervine* (2009) 47 Cal.4th 745, 806.)

"'A prosecutor is held to a standard higher than that imposed on other attorneys because of the unique function he or she performs in representing the interests, and in exercising the sovereign power, of the state.'" (*People v. Hill* (1998) 17 Cal.4th 800, 819-820.) However, "'the term prosecutorial "misconduct" is somewhat of a misnomer to the extent that it suggests a prosecutor must act with a culpable state of mind. A more apt description of the transgression is prosecutorial error.'" (*People v. Centeno* (2014) 60 Cal.4th 659, 666–667 (*Centeno*).)

In reviewing a prosecutor's comments to the jury, "we must view the statements in the context of the argument as a whole." (*People v. Cole* (2004) 33 Cal.4th 1158, 1203 (*Cole*).) Generally, a prosecutor has "'wide latitude to discuss and draw inferences from the evidence at trial,' and whether 'the inferences the prosecutor draws are reasonable is for the jury to decide.'" (*Ibid*.) The relevant question is "'whether there is a reasonable likelihood that the jury construed or applied any of the complained-of remarks in an objectionable fashion.'" (*Id*. at pp. 1202–1203.)

### 2. *Trial Court Proceedings*

Prior to closing arguments, the trial court verbally instructed the jury using standard CALCRIM instructions, in relevant part, as follows:

"You must follow the law as I explain it to you even if you disagree with it. If you believe that the attorneys' comments on the law conflict with my instructions, you must follow my instructions." (CALCRIM No. 200.)

14

"A Defendant in a criminal case is presumed to be innocent. This presumption requires that the People prove a Defendant guilty beyond a reasonable doubt. Whenever I tell you the People must prove something, I mean they must prove it beyond a reasonable doubt . . . . [¶] Proof beyond a reasonable doubt is proof that leaves you with an abiding conviction that the charge is true. The evidence need not eliminate all possible doubt because everything in life is open to some possible or imaginary doubt.

"In deciding whether the People have proved their case beyond a reasonable doubt, you must impartially compare and consider all the evidence that was received throughout the entire trial. Unless the evidence proves the Defendant guilty beyond a reasonable doubt, he is entitled to an acquittal and you must find him not guilty." (CALCRIM No. 220.)

After the court verbally instructed the jury, the prosecutor made an initial closing argument. Four relevant portions are quoted below (Martinez challenges the italicized words):

(1) "Mr. Martinez is a documented Lopers gang member and admitted gang member. So of all of the people on this planet driving a silver light blue Chevy Equinox that was identified by the defendant's own sister as being her vehicle *it makes sense and is reasonable and the only reasonable interpretation of that is that the Lopers gang member brother is the person who was driving at the time.*" (Italics added.)

(2) "The rifle that was found in the Defendant's room in his closet. That is what count 2 deals with. . . . It was in his property, in his possession. He knew he possessed a firearm. It was in his closet with his clothes unsecured, not in a safe, not in any secret compartment where he would get his clothes from. [¶] *A reasonable interpretation of that is he knew the gun was there.*" (Italics added.)

15

(3) "You're about to deliberate. . . . Once you get all that evidence in there and start talking about it, that image will be clear. That the Defendant shot Mr. Ruiz on Spurgeon. Nobody else. He was the one behind the wheel. He was the one holding the gun. *And the only reasonable reliable interpretation of the evidence is that the Defendant is guilty of Counts 1 and 2 and all of the allegations alleged.*" (Italics added.)

(4) "My burden is beyond a reasonable doubt. We talked about that in jury selection. You heard the instructions. *It's not beyond all possible doubt or all scientific certainty or 100 percent. It's beyond a reasonable doubt. It hinges on what is reasonable.*" (Italics added.)

### 3. Application and Analysis

Martinez claims on appeal that the prosecutor committed misconduct during closing argument in four instances. But Martinez did not object at any time during the closing argument, and he did not request the court to admonish the jury, so these claims have been forfeited. (See *People v. Brown* (2003) 31 Cal.4th 518, 553.) Nevertheless, we shall exercise our discretion and address Martinez's prosecutorial misconduct claim on the merits. (*People v. Williams* (1998) 17 Cal.4th 148, 161–162, fn. 6 [an appellate court has authority to reach a forfeited claim].)

Martinez argues "the prosecutor's comments at issue misstated the burden of proof, and thereby constituted misconduct under state law. And since these comments involved the fundamental concept that the prosecution had the burden of proving guilt beyond a reasonable doubt, these comments also infected the entire trial with unfairness, so as to amount to a violation of appellant's federal due process rights." We disagree.

We do not find it reasonably likely that the jurors interpreted the

16

prosecutor's statements in the manner Martinez suggests. The prosecutor appeared to be simply arguing that her interpretation of the evidence was reasonable; the prosecutor did not appear to be misstate or contradict the beyond the reasonable doubt burden of proof as explained by the court. (See *Cole*, *supra*, 33 Cal.4th at pp. 1202–1203 [the relevant question is "'whether there is a reasonable likelihood that the jury construed or applied any of the complained-of-remarks in an objectionable fashion'"].)

Martinez argues that the case of *Centeno*, *supra*, 60 Cal.4th 659, compels a different result. We disagree.

In *Centeno,* the prosecution used a diagram depicting an outline of the state of California, even though some of the descriptions of California on the image were incomplete and inaccurate. (*Centeno*, *supra*, 60 Cal.4th at pp. 665–666, fn. 4.) The prosecutor argued that, despite the incomplete and even inaccurate descriptions, it was clear beyond a reasonable doubt that the state depicted was California. (*Ibid*.) The Supreme Court concluded this constituted prejudicial prosecutorial error and reversed. (*Id.* at pp. 674–678.)

"The use of an iconic image like the shape of California or the Statue of Liberty, unrelated to the facts of the case, is a flawed way to demonstrate the process of proving guilt beyond a reasonable doubt. These types of images necessarily draw on the jurors' own knowledge *rather than evidence presented at trial*. They are immediately recognizable and irrefutable. Additionally, such demonstrations trivialize the deliberative process, essentially turning it into a game that encourages the jurors to guess or jump to a conclusion." (*Centeno, supra,* 60 Cal.4th at p. 669, italics added.)

Here, unlike the prosecutor in *Centeno*, the prosecutor in this case did not use a diagram, or any kind of image, that purported to visually depict the prosecution's burden "of proving guilt beyond a reasonable doubt."

17

(*Centeno, supra,* 60 Cal.4th at p. 669.) Further, unlike *Centeno*, the prosecutor focused on the "evidence presented at trial." (*Centeno, supra,* 60 Cal.4th at p. 669.)

In the first challenged statement, the prosecutor discussed the evidence concerning the sister's Chevy Equinox car admitted during the trial and argued: *"[I]t makes sense and is reasonable and the only reasonable interpretation of that is that the Lopers gang member brother is the person who was driving at the time."* (Italics added.) In the second challenged statement, the prosecutor similarly focused on the evidence—the gun found in Martinez's closet—and argued: "*A reasonable interpretation of that is he knew that the gun was in there.*" (Italics added.) And in the third challenged statement, the prosecutor focused on the totality of the evidence admitted during the trial and argued: "He was the one behind the wheel. He was the one holding the gun. *And the only reasonable reliable interpretation of the evidence is that the Defendant is guilty of Counts 1 and 2 and all of the allegations alleged.*" (Italics added.)

In the fourth challenged statement, the prosecutor said: "My burden is beyond a reasonable doubt. We talked about that in jury selection. You heard the instructions. *It's not beyond all possible doubt or all scientific certainty or 100 percent. It's beyond a reasonable doubt. It hinges on what is reasonable.*" (Italics added.)

We find this argument was essentially a reiteration of the pattern jury instruction: "Proof beyond a reasonable doubt is proof that leaves you with an abiding conviction that the charge is true. The evidence need not eliminate all possible doubt because everything in life is open to some possible or imaginary doubt." (CALCRIM No. 220.)

Indeed, even if there arguably was a conflict between the

18

prosecutor's argument and the court's instruction, we generally must presume the jury followed the court's instruction. (See *People v. Najera* (2006) 138 Cal.App.4th 212, 224 ["The trial court correctly instructed the jury to follow the court's instructions, not the attorneys' description of the law, to the extent there was a conflict. We presume the jury followed that instruction"].)

In sum, we find the case of *Centeno, supra,* 60 Cal.4th 659, to be readily distinguishable and it does not alter our analysis.

To reiterate and conclude, we find that the four challenged statements on appeal do not constitute prosecutorial misconduct (error). (See *Cole, supra*, 33 Cal.4th at p.1203 [a prosecutor has "'wide latitude to discuss and draw inferences from the evidence at trial,' and whether 'the inferences the prosecutor draws are reasonable is for the jury to decide'"].)

*C. Cumulative Prejudice Claim*

Martinez claims the cumulative prejudice of the asserted errors (an alleged evidentiary error and prosecutorial misconduct) requires a reversal of his convictions. We disagree.

"In theory, the aggregate prejudice from several different errors occurring at trial could require reversal even if no single error was prejudicial by itself." (*In re Reno* (2012) 55 Cal.4th 428, 483, superseded by statute on other grounds as stated in *In re Friend* (2021) 11 Cal.5th 720, 728.) However, the rejection of each of a defendant's individual claims "cannot logically be used to support a cumulative error claim [where] we have already found there was no error to cumulate." (*In re Reno*, at p. 483.)

In this case, we found Martinez's claim of evidentiary error was not prejudicial, and his claim of prosecutorial misconduct (error) was not meritorious; therefore, there is no further prejudice to cumulate.

19

## III.

## DISPOSITION

The judgment is affirmed.


                                    MOORE, ACTING P. J.

WE CONCUR:


DELANEY, J.


GOODING, J.